1

2

3

4                           UNITED STATES DISTRICT COURT

5                        NORTHERN DISTRICT OF CALIFORNIA

6

7    TORIANO GERMAINE HUDSON,                    Case No.  15-cv-00787-SI

            Plaintiff,
8
                                                 **ORDER GRANTING SUMMARY
9        v.                                      JUDGMENT FOR DEFENDANTS
                                                 MARWEG, OJO AND SOUSA;
10   DIAZ, et al.,                               REFERRING ACTION TO PRO SE
                                                 PRISONER MEDIATION PROGRAM**
            Defendants.
11                                               Re: Dkt. No. 65

12

13          In this *pro se* civil rights action under 42 U.S.C. § 1983, Toriano Germaine Hudson sues

14   seven Richmond police officers for use of excessive force during his arrest on January 17, 2015.

15   Three of the seven officers now move for summary judgment, urging that there is no evidence that

16   those three officers are liable for the allegedly excessive force because they did not use any force

17   on Hudson and had no realistic opportunity to intervene to prevent the use of allegedly excessive

18   force.  Hudson opposes the motion.  For the reasons discussed below, summary judgment will be

19   granted in favor of defendants Marweg, Ojo, and Sousa.

20

21                                      **BACKGROUND**

22          On January 17, 2014, Hudson caused a car accident while driving his SUV.  *See* Dkt. No. 1

23   at 3.  He was handcuffed and placed in the back of a patrol car by officers from the Richmond

24   Police Department.  *Id.*  According to Hudson, he was then was taken out of the patrol car and

25   subjected to excessive force by officers from the Richmond Police Department.  *Id.*

26          The following facts are undisputed:

27          On January 17, 2014, officers Ojo, Marweg, and Sousa were travelling separately and

28

United States District Court
Northern District of California

responded to a call regarding a vehicle collision near 782 7th Street in Richmond, CA.  Dkt. No. 65 at 4.  Each officer arrived separately, and each was unaware of  the circumstances of Hudson's arrest.  *Id.*  Officer Marweg was the first to arrive on the scene, followed by officer Ojo and then officer Sousa.

Officer Marweg arrived on the scene to collect photographic evidence.  Dkt. No. 65 at 5.  When officer Marweg began photographing the scene, Hudson was detained in a patrol car half a block away.  *Id.*  From his vantage point, officer Marweg noticed Hudson kicking the inside of the patrol car door.  *Id.*  Officer Marweg then turned his attention to the immediate need for crowd control, and his back was toward Hudson and the other officers dealing with Hudson.  *Id.*  At some point, Hudson escaped or was removed from the patrol car, and other officers restrained him.  Meanwhile, officer Marweg continued to do crowd control while facing away from Hudson and the other police officers.  Dkt. No. 65 at 5.  After other officers took over the crowd control duties, officer Marweg resumed taking photographs of the scene, at which time Hudson had been placed in a Wrap restraint and seated on the ground in the street.  Dkt. No. 65 at 5-6.  Officer Marweg took a few photographs of Hudson and then left the scene.  *Id.* at 6.  Officer Marweg did not have any physical contact with Hudson, nor did he witness any of the other officers have any physical contact with Hudson.  *Id.*

When officer Ojo arrived at the scene, he saw a group of officers approximately thirty to forty feet away in the street.  *Id.* at 5.  They appeared to officer Ojo to be detaining a suspect, but officer Ojo could not see who they were grouped around or what they were doing.  *Id.*  Officer Ojo immediately began helping with crowd control efforts after noticing people coming into the surrounding area and crowding the street.  *Id.*  Officer Ojo stood at the western curb near the scene with his back facing the group of officers, and began directing people away from the center of the road where he had seen the group of officers.  *Id.*  At some point, he conducted two witness interviews.  Dkt. No. 65-3 ¶ 6.  Officer Ojo never saw or came into contact with Hudson, nor did he ever witness the other officers come into physical contact with Hudson.  *Id.*

When officer Sousa arrived at the scene, Hudson was in a Wrap restraint, seated on the ground in the street.  *Id.* at 6.  Officer Sousa's role was to assist other officers by following the

ambulance transporting Hudson to the hospital.  *Id.*  Officer Sousa did not have any physical contact with Hudson, nor did he witness any of the other officers have any physical contact with Hudson.  *Id.*

At his deposition, Hudson was asked about the individual defendants' role in the use of force on him.  Hudson admitted that he chose the seven officers to name as defendants because "[t]hose are the ones [he] got off the police report."  Dkt. No. 65-1 at 6.  Hudson gave the following testimony in response to questions about the role of each of the three moving defendants:

> Q:   Officer Ojo, what do you believe he did that he shouldn't have done?
>
> A:   I don't know.  He was there.  I don't know what part he played in it.
>
> *   *   *
>
> Q:   . . . [W]hat do you believe Officer Marwig did that he should not have done?
>
> A:   I don't know what Officer Marwig did either.
>
> Q:   Officer Rick Souza, what do you believe Officer Souza did that he shouldn't have done?
>
> A:   I don't know what part Officer Souza played neither.

Dkt. No. 65-1 at 7-8 .

## VENUE AND JURISDICTION

Venue is proper in the Northern District of California because the events or omissions giving rise to this action occurred in Contra Costa County, located in the Northern District.  *See* 28 U.S.C. §§ 84, 1391(b).  This court has federal question jurisdiction over this action under 42 U.S.C. § 1983.  *See* 28 U.S.C. § 1331.

## LEGAL STANDARD

Summary judgment is proper where the pleadings, discovery, and affidavits show that there is "no genuine dispute as to any material fact and [that] the moving party is entitled to

judgment as a matter of law." Fed. R. Civ. P. 56(a). A court will grant summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial . . . since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A fact is material if it might affect the outcome of the suit under governing law, and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

Generally, the moving party bears the initial burden of identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. The burden then shifts to the nonmoving party to "go beyond the pleadings and by [his or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324 (citations omitted).

A verified complaint may be used as an opposing affidavit under Rule 56, as long as it is based on personal knowledge and sets forth specific facts admissible in evidence. *See Schroeder v. McDonald*, 55 F.3d 454, 460 & fn.10-11 (9th Cir. 1995) (treating plaintiff's verified complaint as an opposing affidavit where, even though verification was not in conformity with 28 U.S.C. § 1746, plaintiff stated under penalty of perjury that contents were true and correct, and allegations were not based purely on his belief but on his personal knowledge). Here, Hudson's second amended complaint (Dkt. No. 47) was not signed under penalty of perjury and, therefore, is not considered evidence for purposes of deciding the motion.

The court's function on a summary judgment motion is neither to make credibility determinations nor to weigh conflicting evidence with respect to a disputed material fact. *See T.W. Elec. Serv. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). The evidence and the inferences to be drawn from the facts must be viewed in the light most favorable to the nonmoving party. *Id.* at 631. "If direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the judge must assume the truth of the evidence set forth by the nonmoving party with respect to that fact." *Id.*

United States District Court
Northern District of California

4

1

2                                          **DISCUSSION**

3    A.      Motion For Summary Judgment

4           Defendants may prevail on a motion for summary judgement if there is "no genuine

5    dispute as to any material fact."  Fed. R. Civ. P. 56(a).  Defendants Ojo, Marweg, and Sousa claim

6    they are entitled to summary judgment because Hudson has provided no evidence to controvert

7    their evidence that they played no role in the force used during his arrest.  Dkt. No. 65 at 7.

8    Defendants argue that they did not use force on Hudson and had "no realistic opportunity to

9    intercede and prevent the allegedly wrongful use of force" by any other officers.  *Id.* at 8 (internal

10   quotations omitted).

11          "Under the Fourth Amendment, police may use only such force as is objectively

12   reasonable under the circumstances."  *Cunningham v. Gates*, 229 F.3d 1271, 1288 (9th Cir. 2000).

13   Police officers not directly involved in the use of excessive force may nonetheless "have a duty to

14   intercede when their fellow officers violate the constitutional rights of a suspect or other citizen."

15   *Id.* at 1289 (quoting *United States v. Koon,* 34 F.3d 1416, 1447 n.25 (9th Cir.1994), *rev'd on other*

16   *grounds,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996)).  However, officers can be held

17   liable for failing to intercede only if they had a realistic opportunity to intercede.  *Id.*  The law

18   does not impose liability on an officer who may have been present at the time of the arrest but had

19   no "realistic opportunity" to intercede.  *See Cunningham*, 229 F.3d at 1290 (concluding that non-

20   shooting officers present at the time of the shooting were not liable because they had no "realistic

21   opportunity" to intercede).

22          Viewing the evidence and reasonable inferences therefrom in the light most favorable to

23   Hudson, no reasonable jury could find in his favor and against the moving defendants.  The

24   undisputed evidence shows that none of the three defendants used any force whatsoever on

25   Hudson.  The undisputed evidence also shows that the three defendants played no role in the use

26   of allegedly excessive force AND had no realistic opportunity to intervene to prevent that use of

27   force from occurring.

28          There is no evidence that officer Marweg witnessed any use of force on Hudson.  Although

United States District Court
Northern District of California

officer Marweg eventually saw Hudson when he took Hudson's photograph, Hudson was already detained in a Wrap restraint at that point in time.  Dkt. No. 65-2 ¶¶ 5, 6.  It is undisputed that officer Marweg at no point observed "any other officers having physical contact with Plaintiff at the scene of his arrest."  *Id.* ¶ 8, 9.  Hudson presents no evidence to the contrary and actually admitted during his deposition that he did not know what officer Marweg did wrong.  Dkt. No. 65-1 at 8.  Hudson fails to present any evidence that would allow a reasonable jury to find officer Marweg liable on a failure-to-intervene theory.

Similarly, there is no evidence that officer Ojo saw any use of force on Hudson.  It is undisputed that officer Ojo only saw officers grouped around a suspect about thirty to forty feet away from Ojo.  *See* Dkt. No. 65-3 ¶ 3.  It also is undisputed that at no point did officer Ojo "observe other officers have physical contact with Plaintiff."  *Id.* ¶ 8.  Hudson presents no evidence to contradict officer Ojo's declaration and, as with officer Marweg, Hudson actually admitted during his deposition that he did not know what officer Ojo did wrong.  On this evidence, no reasonable jury could find officer Ojo liable on a failure-to-intervene theory.

A police officer "not present at the time" of the violent act has no opportunity to intercede and therefore no liability on a failure-to-intervene theory.  *See Cunningham*, 229 F.3d at 1290 ("In this case, officers who were not present at the time of the shootings could not intercede to prevent their fellow officers from shooting at Cunningham . . . .").  Here, it is undisputed that officer Sousa did not appear at the scene until after the alleged use of force already occurred and Hudson had been placed in a Wrap restraint. *See* Dkt. No. 65-4 ¶¶ 2-5.  Just as with respect to officers Marweg and Ojo, Hudson does not offer evidence to rebut Sousa's evidence that he did not arrive until after the allegedly excessive force was used.  As with the other officers, Hudson actually admitted during his deposition that he did not know what officer Sousa did wrong.  On this evidence, no reasonable jury could find officer Sousa liable on a failure-to-intervene theory.

Hudson makes the conclusory statement that "[a]ll officers who did not assist the assault, watched."  Dkt. No. 62 at 2.  He claims there to be a material issue of fact as to whether officers Ojo, Sousa, and Marweg had the opportunity to prevent the other officers' use of force.  *Id.* However, in his deposition, Hudson conceded that he picked "individuals to name as defendants in

6

United States District Court
Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

this lawsuit" based on the names that appeared in the police report and had no information as to the involvement of each of the three moving defendants.  Dkt. No. 65-1 at 7-8.  Hudson does not show that the police report contains any statement that any of the moving defendants used force or witnessed the use of force on him.  Although his conclusory statement that all "officers who did not assist the assault, watched" is under oath, it is insufficient to show a genuine issue for trial in light of Hudson's concession at his deposition that he does not know what part any of the moving defendants played in the alleged wrongdoing.  Officers Ojo, Sousa, and Marweg could not have had the opportunity to intervene to prevent a use of force they did not witness, and there is no evidence that they witnessed any use of force on Hudson.  *See Cunningham*, 229 F.3d at 1290 (concluding "that the non-shooting and non-present officers cannot be held liable for failing to intercede to prevent the shooting of the plaintiffs"); *see also Blackenhorn v. City of Orange*, 485 F.3d 463, 481 n.12 (9th Cir. 2007) (concluding summary judgment was proper for an officer who arrived on the scene after the arrest was completed and for another officer who "at most provided crowd control" but did not participate in the arrest).  On this record, no reasonable jury could find in favor of Hudson on his claim that the three moving defendants are liable for the use of excessive force on him or failed to intervene to prevent the use of excessive force.  Defendants Marweg, Ojo and Sousa are entitled to judgment as a matter of law in their favor.

B.    Miscellaneous Matters

After the motion for summary judgment was fully briefed, Hudson sent in a document labeled "answer to declaration in support of defendants' motion for summary judgment and relief."  Dkt.. No. 71.  The document makes many conclusory assertions and contends that an unspecified defendant failed to provide copies of several documents.

Under Federal Rule of Civil Procedure 56(d), if a party against whom summary judgment is sought shows by declaration or affidavit that, "for specified reasons, [he] cannot present facts essential to justify [his] opposition," the court can defer or deny the summary judgment motion, or allow time for the nonmovant to obtain the evidence.  The party opposing summary judgment must make clear "what information is sought and how it would preclude summary judgment."

*Margolis v. Ryan*, 140 F.3d 850, 853 (9th Cir. 1998)*; see also Noriega-Perez v. United States*, 179 F.3d 1166, 1170 n.1 (9th Cir. 1999) (ALJ's denial of discovery motion proper where party failed to show requested documents were relevant and could have affected the outcome of the summary judgment motion).

Assuming arguendo that the "answer" is intended to be a request under Rule 56(d), Hudson fails to show that Rule 56(d) requires a continuance or delay in the adjudication of the motion for summary judgment. First, Hudson does not show that he actually served discovery requests for the documents he claims were not produced. The court reminded Hudson five months ago of the need to finish his discovery in time to be ready to oppose the summary judgment motion. *See* Dkt. No. 61. Second, even if discovery requests were properly made or planned, Hudson has not shown that the documents sought are essential to his opposition to the pending motion for summary judgment. Hudson only identifies several documents generally (e.g., statements made by defendants and police reports made on the date of his arrest, as well as other miscellaneous items) that he hopes might have something helpful in them. Hudson has had the police report written by officer Diaz since no later than November 2015. *See* Dkt. No. 54; Dkt. No. 68 at 4-5. In fact, he may have had the police report before this action was even filed because he testified that he selected defendants for this action from the police report. Further, Hudson's claimed need for a deposition transcript appears to refer to his own deposition. He does not show what information that transcript would have that he could not obtain merely by consulting his own memory. Hudson has not shown that any of the identified documents contains facts essential to his opposition; he has not made clear "what information is sought and how it would preclude summary judgment against him." *Margolies*, 140 F.3d at 853. The summary judgment motion will not be delayed to enable Hudson to hunt for evidence of unknown value.

Plaintiff filed yet another amended complaint (Dkt. No. 68.). The pleading is stricken for the reasons stated in the order at Dkt. No. 64.

C.    Referral to Pro Se Prisoner Mediation Program

The court has granted summary judgment in favor of three defendants. The four other

defendants chose not to move for summary judgment, so the excessive force claim against those four defendants remains for adjudication.  This case appears a good candidate for the court's mediation program.

Good cause appearing therefor, this case is now referred to Magistrate Judge Vadas for mediation or settlement proceedings pursuant to the Pro Se Prisoner Mediation Program.  The proceedings will take place within one hundred twenty days of the date this order is filed. Magistrate Judge Vadas will coordinate a time and date for mediation or/settlement proceedings with all interested parties and/or their representatives and, within five days after the conclusion of the proceedings, file with the court a report for the prisoner mediation or settlement proceedings.

## CONCLUSION

For the foregoing reasons, the motion for summary judgment filed by defendants Marweg, Ojo, and Sousa is GRANTED.  Dkt. No. 65.  These three defendants are entitled to judgment as a matter of law on Hudson's complaint.  The court will wait until all claims are resolved as to all defendants before entering a single judgment.

This action is now referred to Magistrate Judge Vadas for mediation or settlement proceedings pursuant to the Pro Se Prisoner Mediation Program.  The clerk will send a copy of this order to Magistrate Judge Vadas.

**IT IS SO ORDERED**.

Dated:  November 21, 2016

_____
SUSAN ILLSTON
United States District Judge

9